UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN BOYNTON DAVIS,

             Plaintiff,

v.                                 Case No. 3:15-cv-649-J-34JRK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

             Defendants.

_____

**ORDER**

**I. Status**

Plaintiff John Boynton Davis, a former inmate of the Florida penal system, initiated this action on May 26, 2015, by filing a Civil Rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983. He filed an Amended Complaint (Doc. 11) on August 12, 2015, a Second Amended Complaint (Doc. 14) on January 4, 2016, and a Third Amended Complaint (TAC; Doc. 22) with exhibits (P. Ex.) on April 28, 2016. In the TAC, Davis names the following Defendants: (1) Corizon Health Care Corporation (Corizon); (2) Dr. Chuong Le, M.D., a primary care physician; (3) Dr. Vernon Montoya, M.D., a physician specializing in hematology and oncology; (4) Dr. Marceus, M.D., a primary care physician;[1] (5) Dr. Nicholas Cabrero-Muniz, M.D., a primary care physician; and (6) Julie Jones, Secretary of the Florida Department of Corrections (FDOC). Davis asserts that the

_____

[1] The Court dismissed Defendant Marceus on May 4, 2017. See Order (Doc. 63).

Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they neither treated him for Hepatitis C, hernias, and Idiopathic Thrombocytopenia (IT)[2] nor referred him for treatment. He sues Defendants Le, Montoya, Cabrero-Muniz, and Jones in their individual and official capacities. As relief, Davis seeks compensatory and punitive damages and declaratory relief. He also requests that the Court direct the FDOC to treat him for Hepatitis C, IT and hernias.

This matter is before the Court on the following motions to dismiss: Defendant Dr. Vernon Montoya's Motion to Dismiss Official Capacity Claim (Montoya Motion; Doc. 42); Defendant Julie L. Jones's Motion to Dismiss (Jones Motion; Doc. 49); Defendants Corizon, LLC and Dr. Le's Motion to Dismiss (Corizon Motion; Le Motion; Doc. 55); and Defendant Nicholas Cabrero-Muniz's Motion to Dismiss Plaintiff's Third Amended Complaint (Cabrero-Muniz Motion; Doc. 59). The Court advised Davis that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See Orders (Docs. 29, 61). Plaintiff filed a response in opposition to the motions to dismiss. See Plaintiff's Motion to

_____

[2] Idiopathic Thrombocytopenia is a disorder that can lead to easy or excessive bruising and bleeding. The bleeding results from unusually low levels of platelets — the cells that help blood clot. See http://www.mayoclinic.org.

Deny Dismissal (Response; Doc. 62). The motions to dismiss are ripe for judicial review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015)

(citation and footnote omitted). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

The Eleventh Circuit has stated:

> To survive a motion to dismiss, [plaintiff]'s complaint must have set out facts sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This means he must have alleged "factual content that allow[ed] the court to draw the reasonable inference that the defendant[s] [were] liable for the misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be plausible, but plausibility is not probability. See id.

<u>Lane v. Philbin</u>, 835 F.3d 1302, 1305 (11th Cir. 2016).

### III. Third Amended Complaint[3]

Davis asserts that Defendants Corizon, Le, Montoya, Cabrero-Muniz, and Jones violated his Eighth Amendment right when they neither treated him for Hepatitis C, IT, and hernias nor referred him for treatment. According to Davis, doctors diagnosed him with Hepatitis C and hernias when he entered the FDOC in November 2011, <u>see</u> TAC at 5; Corizon and its doctors diagnosed Davis with "these chronic conditions," and refused to treat him and/or refer him for treatment, <u>id.</u> at 5-6; the FDOC and its health contractors knew Davis had Hepatitis C, hernias, and IT, <u>see</u> <u>id.</u> at 6; "[t]here is a cure for Hepatitis C as well as treatment for Thrombocytopenia and outpatient surgery is available for the hernias," <u>id.</u>; Dr. Cabrero-Muniz examined Davis in May 2015 at Hamilton Correctional Institution Annex (HCIA), <u>see</u> <u>id.</u> at 7; Dr. Cabrero-Muniz advised Davis that Hepatitis C "would eventually prove fatal" for him and refused to refer Davis for treatment, <u>id.</u>; Dr. Montoya examined

---

[3] The TAC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the TAC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Miljkovic v. Shafritz and Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the TAC and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on motions to dismiss filed by Corizon, Le, Montoya, Cabrero-Muniz, and Jones, the Court's recitation of the facts will focus on Davis's allegations as to them.

Davis at Lake Butler Regional Medical Center in June 2015, <u>see</u> <u>id.</u>;
Dr. Montoya advised Davis that he had IT caused by Hepatitis C and
a genetic disorder, <u>see</u> <u>id.</u>; Dr. Montoya would not refer Davis for
treatment until Davis's platelet count dropped to 30, which Davis
considered to be "a potentially life threatening level," <u>see</u> <u>id.</u>;
Dr. Le examined Davis in November 2015, <u>see</u> <u>id.</u>; Dr. Le told Davis
that he was on a waiting list, <u>see</u> <u>id.</u>; Dr. Le neither advised
Davis as to how he could get a copy of the waiting list nor
referred Davis for Hepatitis C treatment or hernia surgery nor
provided a hernia belt, <u>see</u> <u>id.</u>; and Corizon refused to provide
treatment for Davis's medical needs because it did not want "to
absorb the cost," <u>id.</u>

## IV. Defendants' Motions to Dismiss

Defendant Montoya seeks dismissal of Davis's Eighth Amendment
claim against him because Davis fails to provide sufficient facts
that would entitle him to relief against Montoya. <u>See</u> Montoya
Motion at 1, 3-4. He asserts that Davis's official capacity claims
against him are "duplicative, redundant, and unnecessary" of
Davis's claims relating to Corizon and Jones. <u>Id.</u> at 2.
Additionally, Defendant Jones seeks dismissal of Davis's Eighth
Amendment claim against her. She asserts that: (1) Davis's claims
for injunctive relief should be dismissed as moot since the FDOC
released Davis from custody, <u>see</u> Jones Motion at 3-4; (2) she is
entitled to Eleventh Amendment immunity to the extent she is sued

in her official capacity for monetary damages, <u>see</u> <u>id.</u> at 4-5; and (3) Davis fails to provide any facts as to how she personally participated in events giving rise to an Eighth Amendment violation, <u>see</u> <u>id.</u> at 5-7.

Defendant Corizon seeks dismissal of Davis's Eighth Amendment claim against it. Corizon asserts that: (1) Davis neither provided any facts relating to Corizon nor identified an unconstitutional Corizon policy, <u>see</u> Corizon Motion at 8; (2) Davis failed to assert how a Corizon policy violated his Eighth Amendment right, <u>see</u> <u>id.</u> at 9; (3) to the extent Davis seeks to base Corizon's liability on its employees, that claim is barred, <u>see</u> <u>id.</u>; and (4) Davis "simply did not have a need for treatment," <u>id.</u> at 8. Additionally, Defendant Le seeks dismissal of Davis's Eighth Amendment claim against him because: (1) Davis failed to exhaust his administrative remedies before filing the lawsuit, and is therefore barred from pursuing this action against him, <u>see</u> Le Motion at 12-13; (2) Davis does not assert a serious medical need and "simply did not have a medical need for medications while he was incarcerated," <u>id.</u> at 11; (3) Davis's assertion that the Defendants neither treated him nor referred him for treatment, despite evidence to the contrary, is "nothing more than a difference of medical opinion between him and his medical providers," <u>id.</u>; and (4) Davis fails to assert that the Defendants' decisions relating to his treatment worsened his condition, <u>see</u> <u>id.</u> Similarly, Defendant Cabrero-Muniz seeks

dismissal of Davis's Eighth Amendment claim against him because
Davis: (1) failed to exhaust his administrative remedies before
filing the lawsuit, <u>see</u> Cabrero-Muniz Motion at 3-4; and (2) fails
to state an Eighth Amendment claim against him, <u>see</u> <u>id.</u> at 2-3.
Davis opposes the motions to dismiss and requests that the Court
permit his case to proceed to trial. <u>See</u> Response at 1. He asserts
that "the documented proof" of an Eighth Amendment violation exists
in his medical records. <u>Id.</u>

## V. Law and Conclusions

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA) requires an
inmate who challenges prison conditions to "properly exhaust" all
available administrative remedies before filing an action under 42
U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997(e) ("No action shall be brought
with respect to prison conditions under section 1983 of this title,
or any other Federal law, by a prisoner confined in any jail,
prison, or other correctional facility until such administrative
remedies as are available are exhausted."). Proper exhaustion is
mandatory and "demands compliance with an agency's deadlines and
other critical procedural rules" governing the administrative
process. <u>Woodford v. Ngo</u>, 548 U.S. 81, 90-91 (2006); <u>see</u> <u>also</u>
<u>Dimanche v. Brown</u>, 783 F.3d 1204, 1210 (11th Cir. 2015) ("The PLRA
requires 'proper exhaustion' that complies with the 'critical
procedural rules' governing the grievance process."); <u>Jones v.</u>

<u>Bock</u>, 549 U.S. 199, 918-19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Notably, the Supreme Court in <u>Ross v. Blake</u>, 136 S. Ct. 1850 (2016), instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

In <u>Ross</u>, the Supreme Court identified three circumstances in which administrative remedies would be considered unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." <u>Id.</u> Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Generally, inmates incarcerated by the FDOC must follow a three-step grievance process to properly exhaust their administrative remedies. See Fla. Admin. Code r. 33-103.001 through 33-103.018. First, an inmate must file an informal grievance with a designated prison staff member within twenty days of "when the incident or action being grieved occurred." Fla. Admin. Code r. 33-103.011(1)(a). The staff member is required to respond to the grievance in writing within ten days of the receipt of the informal grievance. Fla. Admin. Code r. 33-103.011(3)(a). Second, if the issue is not resolved by the informal grievance, the inmate must file a formal grievance with the correctional institution's warden no later than fifteen calendar days from "[t]he date on which the informal grievance was responded to." Fla. Admin. Code r. 33-103.011(1)(b)1. The warden, assistant warden, or deputy warden then has up to twenty days from receipt of the formal grievance "to take action and respond." Fla. Admin. Code r. 33-103.011(3)(b). Third, if the issue is still not resolved, the inmate must then file an appeal to the Office of the Secretary for the FDOC within fifteen "calendar days from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code r. 33-103.011 (1)(c). A representative for the Office of the Secretary of the FDOC must respond to the grievance appeal within thirty days

of its receipt. Fla. Admin. Code r. 33-103.011(3)(c). Unless the inmate has agreed to an extension of time for a response to his grievance, "expiration of a time limit at any step in the process shall entitle the [inmate] to proceed to the next step of the grievance process." Fla. Admin. Code r. 33-103.011 (4). Notably, medical grievances require only a two-step procedure: the inmate must file a formal grievance at the institutional level with the chief health officer. If the inmate is unsuccessful, he may file an appeal with the Secretary. Fla. Admin. Code r. 33–103.008.

The failure to properly exhaust administrative remedies will bar an inmate from pursing a claim in federal court. See Woodford, 548 U.S. at 92. That said, failure to exhaust under the PLRA is an affirmative defense a defendant must plead and prove in a motion to dismiss. See Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (finding exhaustion of administrative remedies is a matter in abatement and an exhaustion defense should therefore, be raised in a motion to dismiss). The Eleventh Circuit has established a two-step process for deciding motions to dismiss for failure to exhaust administrative remedies. See Turner, 541 F.3d at 1082.

> First, district courts look to the factual
> allegations in the motion to dismiss and those
> in the prisoner's response and accept the
> prisoner's view of the facts as true. The
> court should dismiss if the facts as stated by
> the prisoner show a failure to exhaust.
> Second, if dismissal is not warranted on the
> prisoner's view of the facts, the court makes
> specific findings to resolve disputes of fact,
> and should dismiss if, based on those
> findings, defendants have shown a failure to
> exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted).

Applying this legal framework, the Court turns to the parties' contentions regarding exhaustion in this case. Davis's Response as well as his TAC including exhibits reflect the following facts on the issue of exhaustion. In the TAC, Davis asserts that he "attached a full list of grievances filed by [him] attempting to obtain treatment." TAC at 5; see Plaintiff's Exhibit List, Doc. 22-2 at 1-2. While housed at Hardee, Okeechobee, Martin and South Bay Correctional Institutions in 2013 and 2014, Davis submitted twelve medical grievances that addressed his Hepatitis C, liver and blood draw issues. See P. Exs. 1B; 2B; 3B; 4B; 5B; 6B; 7B; 8B; 9B; 9D; 10B; and 11C. In 2015, Davis submitted six medical grievances while housed at Columbia Correctional Institution Annex; those grievances addressed his Hepatitis C and blood draw issues relating to Corizon and Dr. Marceus. See P. Exs. 12B; 13B; 14B; 16B; 17B; and 19B.[4]

_____

[4] It appears that Davis's exhibits 12B and 15B are the same grievance, and exhibits 13B and 19D are the same grievance.

According to Davis, Cabrero-Muniz examined him in May 2015 at HCIA, advised him that his Hepatitis C condition would ultimately be fatal, and refused to refer Davis for treatment, TAC at 7; Le examined Davis in November 2015, and advised him that he was on a waiting list, <u>see</u> <u>id.</u>; and Le neither advised Davis as to how he could obtain a copy of the waiting list nor referred Davis for Hepatitis C treatment or hernia surgery nor provided a hernia belt, <u>see</u> <u>id.</u> In their motions to dismiss, Defendants Cabrero-Muniz and Le assert that Davis failed to exhaust his administrative remedies as to medical issues relating to them. <u>See</u> Cabrero-Muniz Motion at 3-4; Le Motion at 12-13. Defendants assert that in none of Davis's grievances does he raise medical issues relating to them or HCIA, and, in fact, Davis's most recent grievance (P. Ex. 17B), dated April 2, 2015, addressed his Hepatitis C and blood draw issues relating to Dr. Marceus. <u>See</u> Cabrero-Muniz Motion at 4; Le Motion at 13. Although Davis opposes the motions to dismiss, he does not address Defendants' assertions relating to his failure to exhaust his administrative remedies as to them. <u>See</u> Response. In his TAC, Davis does assert that he submitted numerous grievances concerning his medical issues. However, those grievances addressed medical issues relating to medical personnel involved in Davis's medical treatment before Defendants Cabrero-Muniz and Le became involved in May 2015 and November 2015, respectively. Notably, Davis presents no facts to support even an inference that the grievance process

was unavailable to him during the relevant time period, from May 2015 through the latter part of 2015.

In light of the facts above, at the first step of the <u>Turner</u> analysis, the Court concludes that Davis failed to exhaust his administrative remedies as to Defendants Cabrero-Muniz and Le. As such, Defendants Cabrero-Muniz and Le's Motions are due to be granted, and Davis's claims against them will be dismissed.[5]

## B. Eleventh Amendment Immunity

To the extent Defendants Montoya and Jones assert that they are entitled to Eleventh Amendment immunity, this Court agrees.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well established that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." <u>Papasan v. Allain</u>, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. <u>Summit Med. Assocs., P.C. v. Pryor</u>, 180 F.3d 1326, 1336 (11th Cir. 1999). . . .

---

[5] Notably, the prison's administrative remedies are no longer available to Davis because he is no longer incarcerated. <u>See</u> Notice of Address Change (Doc. 50), filed January 19, 2017.

<u>Hayes v. Sec'y, Fla. Dep't of Children & Families</u>, 563 F. App'x 701, 703 (11th Cir. 2014) (per curiam).

In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. <u>See</u> <u>Gamble</u>,[6] 779 F.2d at 1513-20.

Accordingly, in <u>Zatler</u>, the court found that the FDOC Secretary was immune from suit in his official capacity. <u>Id.</u> Insofar as Davis may be seeking monetary damages from Defendants in their official capacities, the Eleventh Amendment bars suit. Therefore, Defendants Montoya and Jones's Motions are due to be granted as to Davis's claims for monetary damages from them in their official capacities.

### C. Injunctive Relief

Defendant Jones asserts that Davis's claims for injunctive relief should be dismissed as moot since the FDOC released Davis from custody. <u>See</u> Jones Motion at 3-4. This Court agrees. Davis's claims for injunctive relief, <u>see</u> TAC at 8, should be dismissed as moot. According to the offender network, the FDOC took custody of

---

[6] <u>Gamble v. Fla. Dep't of Health & Rehab. Serv.</u>, 779 F.2d 1509 (11th Cir. 1986).

Davis on December 7, 2011, and released him on January 7, 2017. <u>See</u>
http://www.dc.state.fl.us/offenderSearch; Notice of Change of
Address (Doc. 50), filed January 19, 2017. The general rule in this
Circuit is that a transfer or a release of a prisoner from prison
will moot that prisoner's claims for injunctive and declaratory
relief. <u>Zatler</u>, 802 F.2d at 399. The rationale underlying this rule
is that injunctive relief is "a prospective remedy, intended to
prevent future injuries," <u>Adler v. Duval Cty. Sch. Bd.</u>, 112 F.3d
1475, 1477 (11th Cir. 1997), and, as a result, once the prisoner
has been released or transferred, the court lacks the ability to
grant injunctive relief and correct the conditions of which the
prisoner complained. <u>See</u> <u>Wahl v. McIver</u>, 773 F.2d 1169, 1173 (11th
Cir. 1985) (per curiam) (stating that a prisoner's past exposure to
sub-par conditions in a prison "does not constitute a present case
or controversy involving injunctive relief if unaccompanied by any
continuing, present adverse effects"). Thus, Davis's claims for
injunctive relief relating to any sub-par conditions while in FDOC
custody fail to present a case or controversy since the FDOC
released him in January 2017. Therefore, Defendant Jones's request
to dismiss Davis's claims for injunctive relief as moot is due to
be granted.

## D. Defendant Julie Jones

Defendant Jones asserts that there are no factual allegations describing how she personally participated in events giving rise to an Eighth Amendment violation, and this Court agrees. Davis neither provides any factual assertions relating to FDOC Secretary Jones nor allegations as to how she may have violated Davis's federal constitutional rights. To the extent Davis asserts a supervisory claim against Jones, the United States Court of Appeals for the Eleventh Circuit has stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[7] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[8] "The

---

[7] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

[8] Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Brown</u>, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," <u>Gonzalez</u>, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991).

<u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008); see <u>Keith v. DeKalb Cty., Ga.</u>, 749 F.3d 1034, 1047-48 (11th Cir. 2014). In sum,

To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights,[9] (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights,[10] (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it,[11] or (4) a

---

[9] <u>See</u> <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.") (citation omitted).

[10] <u>See</u> <u>Goebert</u>, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

[11] <u>See</u> <u>Douglas v. Yates</u>, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed Yates [(an Assistant Warden)] of ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct. These allegations allow a

> history of widespread abuse that put the
> supervisor on notice of an alleged deprivation
> that he then failed to correct. <u>See</u> <u>id.</u> at
> 1328-29 (listing factors in context of summary
> judgment).[12] A supervisor cannot be held
> liable under § 1983 for mere negligence in the
> training or supervision of his employees.
> <u>Greason v. Kemp</u>, 891 F.2d 829, 836-37 (11th
> Cir. 1990).

<u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam).

Thus, any supervisory claim against Jones fails because Davis has

failed to allege any facts suggesting that she was personally

involved in, or otherwise causally connected to, the alleged

violations of his federal statutory or constitutional rights.

Therefore, Defendant Jones's Motion is due to be granted, and the

Court will dismiss Davis's claims against her.

### E. Defendant Dr. Vernon Montoya, M.D.

Defendant Montoya seeks dismissal of Davis's Eighth Amendment

claim against him. He asserts that Davis fails to provide

sufficient facts that would entitle him to relief against Montoya.

<u>See</u> Montoya Motion at 3-4. Davis opposes the Motion. <u>See</u> Response.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege

that (1) the defendant deprived him of a right secured under the

United States Constitution or federal law, and (2) such deprivation

occurred under color of state law. <u>Salvato v. Miley</u>, 790 F.3d 1286,

---

reasonable inference that Yates knew that the subordinates would
continue to engage in unconstitutional misconduct but failed to
stop them from doing so.").

[12] <u>West v. Tillman</u>, 496 F.3d 1321 (11th Cir. 2007).

1295 (11th Cir. 2015); <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." <u>Rodriquez v. Sec'y, Dep't of Corr.</u>, 508 F.3d 611, 625 (11th Cir. 2007) (quoting <u>Zatler</u>, 802 F.2d at 401). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendants.

The Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

>"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." <u>Farmer</u>, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[13] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. <u>Id.</u> However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. <u>Hudson</u>, 503 U.S. at 8-9, 112 S.Ct. at 1000.[14] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by

---

[13] <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

[14] <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).

> such conditions that gives rise to an Eighth
> Amendment violation. <u>Farmer</u>, 511 U.S. at 828,
> 114 S.Ct. at 1974 (quotation and citation
> omitted); <u>Wilson</u>, 501 U.S. at 303, 111 S.Ct.
> at 2327.[15]

<u>Thomas v. Bryant</u>, 614 F.3d 1288, 1306-07 (11th Cir. 2010).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. <u>Goebert</u>, 510 F.3d at 1326.

> "A serious medical need is considered
> 'one that has been diagnosed by a physician as
> mandating treatment or one that is so obvious
> that even a lay person would easily recognize
> the necessity for a doctor's attention.'" <u>Id.</u>
> (citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>,
> 40 F.3d 1176, 1187 (11th Cir. 1994)). In
> either case, "the medical need must be one
> that, if left unattended, pos[es] a
> substantial risk of serious harm." <u>Id.</u>
> (citation and internal quotations marks
> omitted).

<u>Brown</u>, 387 F.3d at 1351.

Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson</u>, 598 F.3d at 737 (setting

---

[15] <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).

forth the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing <u>Farrow</u>, 320 F.3d at 1245).

> In <u>Estelle</u>[16], the Supreme Court established that "deliberate indifference" entails more than mere negligence. <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. 285; <u>Farmer</u>, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in <u>Farmer</u> by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u>[17] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>,[18] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46. Davis has not alleged facts sufficient to state a claim under the Eighth Amendment in that he has not

---

[16] <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

[17] <u>McElligott v. Foley</u>, 182 F.3d 1248 (11th Cir. 1999).

[18] <u>Taylor v. Adams</u>, 221 F.3d 1254 (11th Cir. 2000).

shown that Montoya was deliberately indifferent to his serious medical needs.

As to any complaints about the Defendant's negligent acts and unprofessional conduct in providing allegedly substandard medical care, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham, 654 F.3d at 1176 (quotation marks and citation omitted). While Plaintiff's allegations may suggest medical malpractice, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (citing Estelle, 429 U.S. at 106). Consequently, the allegedly negligent conduct of which Davis complains does not rise to the level of a federal constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.

According to Davis, Montoya examined him at Lake Butler Regional Medical Center in June 2015, and advised Davis that he would not refer Davis for additional medical treatment until

Davis's platelet count dropped to thirty. <u>See</u> TAC at 7. The United States Supreme Court has stated:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most[,] it is medical malpractice, and as such the proper forum is the state court . . . .

<u>Estelle</u>, 429 U.S. at 107; <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [defendant] should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."). "Nor does a simple difference in medical opinion as to [plaintiff's] diagnosis or course of treatment support a claim of cruel and unusual punishment." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted). Notably, Davis acknowledges that FDOC medical personnel drew his blood every three to six months for over five years as part of the treatment plan and monitoring process. <u>See</u> Response at 1. Additionally, the FDOC advised Davis that "[l]evels have to be within a certain range to receive the new medication" for Hepatitis C. <u>See</u> P. Ex. 13A. Davis's interaction with Defendant Montoya in June 2015 does not rise to the level of a federal constitutional violation and amounts to a difference in medical opinion between Montoya and Davis.

Therefore, Montoya's Motion is due to be granted, and the Court will dismiss Davis's claims against him.

**F. Defendant Corizon Health**

It appears that Davis is suing Corizon for alleged mismanagement of his medical care. Corizon contracted with the FDOC to provide medical services to inmates within the state of Florida. Although Corizon is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state ... is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Indeed,

> "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); see Denham v. Corizon Health, Inc., No. 15-12974, 2017 WL 129020, at *4 (11th Cir. Jan. 13, 2017) (stating that when a government function is performed by a private entity like Corizon, the private entity is treated as the functional equivalent of the government for which it works) (citation omitted).

Where a deliberate indifference medical claim is brought against an entity, such as Corizon, based upon its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot be based on the theory of respondeat superior. Craig, 643 F.3d at 1310 (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)); see Denno v. Sch. Bd. of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must allege that the constitutional deprivation was the result of "an official

government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating Monell "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" Grech, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur, 475 U.S. at 483-84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state

a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. <u>See</u> <u>Grech</u>, 335 F.3d at 1330; <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." <u>Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown</u>, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." <u>Sewell</u>, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" <u>Snow ex rel. Snow v. City of Citronelle</u>, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted). Because Corizon's liability under § 1983 would be based on its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Davis must plead that an official policy or a custom or practice of Corizon was the moving force behind the alleged federal constitutional violation.

Upon review, Davis has neither identified an official Corizon policy of deliberate indifference nor an unofficial Corizon custom or practice that was "the moving force" behind any alleged constitutional violation. Corizon cannot be held liable based on

any alleged conduct of or decisions made by its employees simply because they were working under contract for Corizon to provide medical care to inmates incarcerated in the FDOC. Davis's factual allegations relating solely to alleged individual failures in his medical care are simply insufficient to sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying adequate medical care, much less that the practice was so widespread that Corizon had notice of violations and made a "conscious choice" to disregard them. <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998). Therefore, Corizon's Motion is due to be granted, and the Court will dismiss Davis's claims against Corizon.

Therefore, it is now

**ORDERED:**

1.    Defendant Dr. Vernon Montoya's Motion to Dismiss Official Capacity Claim (Doc. 42) is **GRANTED**, and Davis's claims against him are **DISMISSED**.

2.    Defendant Julie L. Jones's Motion to Dismiss (Doc. 49) is **GRANTED**, and Davis's claims against her are **DISMISSED**.

3.    Defendants Corizon, LLC and Dr. Le's Motion to Dismiss (Doc. 55) is **GRANTED**, and Davis's claims against them are **DISMISSED**.

4.    Defendant Nicholas Cabrero-Muniz's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 59) is **GRANTED**, and Davis's claims against him are **DISMISSED**.

5.    The Clerk shall enter judgment dismissing this case and terminating any pending motions.

6.    The Clerk shall close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of May, 2017.

MARCIA MORALES HOWARD
United States District Judge

sc 5/8
c:
John Boynton Davis
Counsel of Record